# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| ROUQUE "ROCKY" De La FUENTE, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> SOUTH CAROLINA DEMOCRATIC PARTY, ) <br> and MARK HAMMOND, ) <br> SOUTH CAROLINA SECRETARY OF STATE ) <br> ) <br> Defendants. ) <br> _____) | C/A NO.: 3:16-cv-00322-CMC |

**DEFENDANT SOUTH CAROLINA DEMOCRATIC PARTY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF AND/OR MOTION FOR SUMMARY JUDGMENT**

Defendant South Carolina Democratic Party ("SCDP") respectfully submits the following memorandum of law in opposition to Plaintiff's Motion for Preliminary Injunctive Relief and/or Motion for Summary Judgment.

## INTRODUCTION

### I.     Plaintiff's Complaint.[1]

This is a ballot access case. Plaintiff's complaint alleges that Mr. Roque "Rocky" De La Fuente is a candidate for the Democratic Party's nomination for the office of President of the United States. On February 2, 2016, Plaintiff filed a complaint alleging two causes of action

---

[1] Plaintiff filed a nearly identical Complaint against the Democratic Party of Florida and Ken Detzner, Secretary of State of Florida. United States District Judge Robert L. Hinkle denied without prejudice Plaintiff's Motion for Preliminary Injunction finding "… plaintiffs have failed to establish a substantial likelihood – or any likelihood at all – that they will prevail on the merits." (Florida Order Exhibit A). The Court stated further that Secretary of State will not be compelled to put an *insubstantial* candidate (Mr. De La Fuente) on the ballot. (Exhibit A).

against Defendants SCDP and Mark Hammond, South Carolina Secretary of State. On February 23, 2016, Plaintiff filed a virtually identical First Amended Complaint against the SCDP and substituted Defendants the South Carolina Election Commission ("SEC") and several members of the Commission in their official capacity only and removed Mark Hammond, SC Secretary of State in the text of the Complaint but failed to conform the caption to reflect the substitution. Plaintiff alleges that the SCDP's method for selecting its candidates is unconstitutional. Plaintiff has moved for a preliminary injunction compelling the SEC to include Plaintiff's name on the list of candidates to appear on the February 27, 2016, South Carolina Democratic Presidential Preference Primary.

In his first cause of action, Plaintiff alleges that the SCDP "violated Plaintiff's rights under the Fourteenth Amendment by failing to include the name Roque "Rocky" De La Fuente Guerra on the list of candidates to be placed on the South Carolina Presidential Preference Primary ballot for February 27, 2016." (Complaint ¶19.) In addition, the complaint alleges "that the decision of the Executive Committee of the Democratic Party is arbitrary and capricious and their delegate selection plan was unconstitutionally vague depriving Plaintiff of due process of law and that plan was implemented in a manner which deprived Plaintiff of due process." (Complaint ¶21.)

The complaint also alleges that the decision of the South Carolina Democratic Party to include; Hillary Clinton, Bernie Sanders, Martin O'Malley, and Willie Williams on the list of candidates to be placed on the South Carolina presidential primary ballot has resulted in "actual discrimination based on racial and national origin." (Complaint ¶¶29, 30.) The complaint alleges that the SCDP "may not refuse ballot access to a state run presidential primary election

2

arbitrarily, where such refusal results in de facto discrimination against a candidate based on racial or national origin." (Complaint ¶31.)

Finally, the complaint alleges that the SCDP, "acting under color of state law, is committing acts in violation of the 14th Amendment to the United States Constitution in determining the number and percentage of pledged delegates assigned to each candidate for the Democratic nomination for president, and to have those delegates seated in those numbers and percentages at the Democratic Party's national nominating convention, pursuant to party rule." (Complaint ¶15.)[2]

Plaintiff's second cause of action alleges that the SCDP's "refusal to include [Plaintiff's] name on the list of approved Presidential candidates has resulted in de facto discrimination against the Plaintiff on the basis of national origin and denied him equal protection under the laws," in violation of 42 U.S.C. § 2000d et seq., Title VI of the Civil Rights Act of 1964.[3] (Complaint ¶¶27-28[4])

## II.     Background Information.

### A.     Candidate Placement on the Presidential Preference Ballot

---

[2] Plaintiff's first cause of action purports to be for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1343 (civil rights jurisdiction), 1361 (jurisdiction to compel an officer of the United States) and 2201 (declaratory judgment).  Plaintiff then makes numerous allegations concerning the deprivation of constitutional rights, without alleging a requisite statute that provides for the actual cause of action.  Further, Plaintiff does not name an officer of the United States as a party or actor for purposes of jurisdiction under 28 U.S.C. § 1361.

[3] Plaintiff's lawsuit purports to be for relief under 42 U.S.C. § 200d et. seq.  (Complaint ¶ 22). Plaintiff's Motion for Preliminary Injunctive Relief makes no reference to this statutory section. Assuming Plaintiffs intended to allege relief under 42 U.S.C. § 2000d et. seq., he has not alleged what "federally assisted program" excluded, denied or discriminated against him on the ground of race, color or national origin.

[4] Plaintiff omits paragraph numbers for Paragraphs 24-25.

South Carolina state law recognizes the ability of each political party to determine the names of the presidential candidates to be placed on the presidential preference primary ballot. S.C. Code Ann. § 7-11-20, provides in pertinent part:

> [T]he state committee of the party shall set the date and the filing requirements, including a certification fee. Political parties *must verify the qualifications of candidates prior* to certifying to the State Election Commission the names of candidates to be placed on primary ballots. The written certification required by this section must contain a statement that each certified candidate meets, or will meet by the time of the general election, or as otherwise required by law, the qualifications in the United States Constitution, statutory law, *and party rules* to participate in the presidential preference primary for which he has filed. Political parties *must not certify any candidate who does not* or will not by the time of the general election meet the qualifications in the United States Constitution, statutory law, and *party rules* for the presidential preference primary for which the candidate desires to file, *and such candidate's name must not be placed on a primary ballot.* [Emphasis Added].

The presidential preference primary is an integral part of the national Democratic Party's delegation selection process. The delegate selection process is governed by the Charter and Bylaws of the Democratic Party of the United States, the Delegate Selection Rules for the 2016 Democratic National Convention, the Call for the 2016 Democratic National Convention, the Regulations of the Rules and Bylaws Committee for the 2016 Democratic National Convention, the rules of the South Carolina Democratic Party, the South Carolina Code of Laws, and the Delegate Selection Plan.

In accordance with the South Carolina Delegate Selection Plan and Affirmative Action Plan ("the Plan"), South Carolina will use a proportional representation system based on the results of a Presidential Preference Primary for apportioning delegates to the 2016 Democratic National Convention. (The Plan Exhibit B). The Plan outlines the process through which a

putative presidential candidate will seek access to the South Carolina Presidential Preference Primary ballot:

> A presidential candidate gains access to the South Carolina ballot by filing a statement of candidacy with the South Carolina Democratic Party….Pursuant to §7-11-20(B)(2) of the Code of Laws of South Carolina, a candidate seeking the nomination of the Democratic Party for President of the U.S. will be certified by the SCDP to the State Election Commission as a candidate for the Democratic presidential primary. *Only those candidates determined by a vote of the State Party Executive Council to be generally acknowledged or recognized in news media throughout the United States as viable candidates for that office, and who are actively campaigning for the South Carolina Democratic Presidential Primary will be certified.* Only those candidates about whom such a determination is made by the Executive Council shall be deemed to meet the qualifications of party rules under and for the purposes of §7-11-20(B)(2) of the Code of Laws. Additionally, no one may gain access to the South Carolina Democratic Ballot unless he or she is a registered voter, is legally qualified to hold the office of the President of the United States, and is entitled to obtain delegates. [Emphasis Added].

The Plan, pp. 13-14. SCDP published The Plan to the public by press release and by placing it on the SCDP website on June 12, 2015. (Exhibit C Perkey Affidavit ¶ 5). The SCDP Executive Council met on December 7, 2015 in accordance with The Plan. At the meeting all candidates who filed to participate in the SCDP presidential primary were considered and only *substantial* candidates were certified to the SEC. Perkey Affidavit ¶ 4. At the meeting, Perkey reported on his investigation of the candidacy of Mr. De La Fuente. Perkey Affidavit ¶¶ 5 - 14. The Plan provides *[o]nly those candidates determined by a vote of the State Party Executive Council to be generally acknowledged or recognized in news media throughout the United States as viable candidates for that office, and who are actively campaigning for the South Carolina Democratic Presidential Primary will be certified.* Perkey advised the SCDP Executive Council, that Plaintiff was not generally acknowledged or recognized in news media throughout the United States as a viable candidate and the Plaintiff had absolutely no presence in South Carolina.

5

Perkey Affidavit ¶¶ 9 - 13.  The Plaintiff has no campaign presence in South Carolina, to wit, no staff, no office, no community support, no clergy or elected official endorsements, no participation in party presidential forums or debates, no campaign material. Perkey Affidavit ¶ 12.  Inasmuch as neither element of The Plan's test for a viable substantial candidate was satisfied, Perkey recommended that Plaintiff not be certified. Perkey Affidavit ¶ 14.  A discussion of Plaintiff's candidacy was held among the members of the SCDP Executive Council and as a result no member of the council moved for the certification of Plaintiff's candidacy. Perkey Affidavit ¶ 14.  Plaintiff was not certified as a candidate to the SEC to be included in the SCDP presidential preference primary to be held February 27, 2016. Perkey Affidavit ¶ 15.  On December 29, 2015, the SCDP through a letter Chairman Harrison advised Plaintiff that his filing was not approved and returned his filing fee check. Perkey Affidavit ¶ 16.

      **B.**  **The timing of Plaintiff's request for a Preliminary Injunction**

Defendant SCDP joins and supports Defendant SEC's position objecting to Plaintiff's request for Preliminary Injunction.  Plaintiff was aware, as early as December 29, 2015, that his name would not be included on the ballot.  Complaint, ¶ 9, and Complaint Exhibit B.  However, Plaintiff did not file a Complaint until February 2, 2016, more than a month after he knew of the SC Democratic Party's decision.  He waited until February 22, 2016 to seek an injunction. Importantly, Plaintiff did not file his Complaint, or seek a Preliminary Injunction, *until well after* the deadline for the Election Commission to mail Presidential Preference Primary ("PPP") absentee ballots to military personal and overseas citizens, pursuant to the requirements of the Uniformed and Overseas Absentee Voting Act, 42 U.S.C. section 1973ff, et seq. (UOCAVA), and SC Code Ann. 7-15-680.  It is the shared position of the SCDP and the SEC that the "status quo" dictates that the SECE be permitted to continue to prepare for and conduct the PPP in

6

accordance with the schedule provided in the election laws of this State.  To grant the Plaintiff's request, which was brought months after the SCDP submitted its list of candidates to the Commission for inclusion on the presidential preference primary ballot would cause disruption to this orderly process and simply could not be accomplished as the deadline for mailing absentee military ballots passed prior to Plaintiff filing this action.  Recalling these ballots could only be done at great expense and delay to the primary.  A delay could undermine the efficacy of the vote by causing confusion among the electorate and negatively impacting voter participation.

### III.    Legal Argument

Rule 65 of the Federal Rules of Civil Procedure provides for the issuance of preliminary injunctions as a means of preventing harm to a party before the Court can fully adjudicate the claims in dispute. Courts have universally recognized that a preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." Centro Tepeyac v. Montgomery Cnty., 722 F.3d 184, 188 (4th Cir. 2013) (internal quotations omitted).  A preliminary injunction is designed to maintain a particular relationship between the parties in anticipation of a decision on the merits, pending completion of the litigation. U.S. Dep't of Labor v. Wolf Run Mining Co., 452 F.3d 275, 280 (4th Cir. 2006).  Though a temporary restraining order and a preliminary injunction differ in their duration (compare Fed. R. Civ. P. 65(a) and Fed.R.Civ.P. 65(b)), the legal standard for issuing a temporary restraining order is the same as that for a preliminary injunction.

A plaintiff seeking a preliminary injunction must establish: (1) that it is likely to succeed on the merits of the case; (2) that it is likely to suffer irreparable harm in the absence of

7

preliminary relief; (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). The Winter standard is significantly different than the previous Blackwelder Furniture standard, in which the Court first looked at the balance of the hardships between the parties. The Fourth Circuit has abrogated the Blackwelder Furniture test following the Supreme Court's pronouncement in Winter. See Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346-47 (4th Cir. 2009), cert. granted and judgment vacated, 559 U.S. 1089 (2010), reaffirmed in part, remanded, 607 F.3d 355 (4th Cir. 2010) (per curiam). The Winter standard is substantially more difficult for a plaintiff to establish a legitimate basis for a preliminary injunction.

In the instant case, Plaintiff can prove none of the elements necessary to meet the strict requirements for a Preliminary Injunction.

### A.     **Plaintiff cannot demonstrate any likelihood of success on the merits**

Plaintiff has failed to make an adequate showing that he is likely to succeed on the merits of his claim to justify a Preliminary Injunction. Indeed, as the Court in Florida stated Plaintiff has not established any likelihood at all that they will prevail on the merits. (Exhibit A p. 2). Moreover in the Florida case, the Plaintiff had additional plaintiffs, putative voters, who were allegedly vouching for the Plaintiff's candidacy to give it some substantial viability. Here, there is even less than no "likelihood at all" as described in the Florida Order. In order to meet his burden under the substantial likelihood of success prong, Plaintiff must show the court that he would ultimately prevail on the merits of his claim. Plaintiff's claims demonstrate no likelihood of success on the merits, and must fail, because Plaintiff cannot establish that the SCDP's internal decision-making process to determine who shall be placed on the Presidential Preference

Primary ballot constitutes "state action"; and because Plaintiff has failed to file any written challenge to the decision to not place Plaintiff on the Presidential Preference Primary ballot and has made no objection until the filing of this action months after the preparation and mailing of ballots. Accordingly, this Court should deny the Plaintiffs' request for injunctive relief.

    1.    The South Carolina Democratic Party's Internal Process to Determine Who Shall be Placed on the Presidential Preference Primary Ballot Does Not Constitute "State Action" and is protected Under the 1st Amendment to The United States Constitution.

In an action brought under 42 U.S.C. § 1983, the initial inquiry must focus on whether the following two essential elements are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Duke v. Cleland,* 5 F.3d 1339, 1403 (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1912, 68 L. Ed. 2d 420 (1981), *overruled on other grounds, Daniel v. Williams,* 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)). Although not actually pled in the first cause of action, Plaintiff alleges that SCDP violated the rights of Plaintiff under the 14th Amendment to the Constitution, and that the decision of the Executive Committee of the South Carolina Democratic Party to not approve Plaintiff's filing is "unconstitutionally vague," thus depriving Plaintiff of due process. (Complaint at ¶21) Plaintiffs also contend that the SCDP's decision making process to determine placement on the Presidential Preference Primary Ballot "resulted in actual discrimination based on racial and national origin[,]" as well as "de facto discrimination against a candidate based on national origin." (Complaint at ¶¶ 21-22). Finally, in the first cause of action, Plaintiffs contend that the SCDP, "acting under color of state law" is violating the 14th Amendment to the Constitution. (Complaint ¶19).

9

Plaintiff himself notes that a threshold matter to his constitutional challenge is whether the SCDP's internal process to determine who shall be placed on the Presidential Preference Primary Ballot constitutes "state action" that would be subject to constitutional challenge (presumably under 42 U.S.C. § 1983). Plaintiff makes no argument as to why the actions of the SCDP are state actions beyond his conclusory statement that the Court "should have no difficulty finding that the requisite state action exists." (Plaintiff's Memorandum p.8). The actions of the party are not state actions. In South Carolina, S.C. Code Ann. §7-11-20 governs the presidential preference process and provides as follows:

> [T]he state committee of the party shall set the date and the filing requirements, including a certification fee. Political parties must verify the qualifications of candidates prior to certifying to the State Election Commission the names of candidates to be placed on primary ballots. The written certification required by this section must contain a statement that each certified candidate meets, or will meet by the time of the general election, or as otherwise required by law, the qualifications in the United States Constitution, statutory law, and party rules to participate in the presidential preference primary for which he has filed. Political parties must not certify any candidate who does not or will not by the time of the general election meet the qualifications in the United States Constitution, statutory law, and party rules for the presidential preference primary for which the candidate desires to file, and such candidate's name must not be placed on a primary ballot.

A political party has a First Amendment right to freedom of association, and this associational right includes the freedom to limit is membership and its candidates for public office. *See, Swanson v. Pitt,* 330 F. Supp. 2d 1269, 1275 (M.D. Ala. 2004). The SCDP enjoys a constitutionally protected freedom which includes the right to identify the people who constitute this association that was formed for the purpose of advancing shared beliefs and to limit the association to those people only. *See, Democratic Party of the U.S. v. Wisconsin*, 450 U.S. at 122. Further, political parties have the discretion to govern themselves as they see fit. *See*

10

*Democratic Party v. Wisconsin*, 450 U.S. at 124 n. 26 (citing *Ripon Soc., Inc. v. Nat'l Republican Party*, 525 F.2d 567, 585 (*en banc*) See, also California Democratic Party v. Jones, 530 U.S. 567 (2000). ("[A] party's choice, as among various ways of governing itself, of the one which seems best calculated to strengthen the party and advance its interests, deserves the protection of the Constitution . . . ."). This right is expressly recognized in §7-11-20 requirement that the candidates meet not only the legal requirements for office but that they must also meet the parties' requirements.

The SCDP exercised its First Amendment associational rights when determining candidates for the Presidential Preference Primary in South Carolina. The SCDP is protected by a "constitutionally protected right of political association." Cousins v. Wigoda, 419 U.S. 477, 487 (1975). The party, and its members, are entitled to protected status because the purpose of the party is to associate for "common advancement of political beliefs." Kusper v. Pontikes, 414 U.S. 51, 56 (1973). See, also California Democratic Party v. Jones, 530 U.S. 567 (2000).

The SCDP's delegate selection process is governed by the Charter and Bylaws of the Democratic Party of the United States, the Delegate Selection Rules for the 2016 Democratic National Convention, the Call for the 2016 Democratic National Convention, the Regulations of the Rules and Bylaws Committee for the 2016 Democratic National Convention, the rules of the South Carolina Democratic Party, the South Carolina Code, and the Delegate Selection Plan. In accordance with the Delegate Selection Plan, South Carolina will use a proportional representation system based on the results of a Presidential Preference Primary for apportioning delegates to the 2016 Democratic National Convention. The plan outlines the process through which a putative presidential candidate will seek access to the South Carolina Presidential Preference Primary ballot:

> A presidential candidate gains access to the South Carolina ballot by filing a statement of candidacy with the South Carolina Democratic Party….Pursuant to §7-11-20(B)(2) of the Code of Laws of South Carolina, a candidate seeking the nomination of the Democratic Party for President of the U.S. will be certified by the SCDP to the State Election Commission as a candidate for the Democratic presidential primary. Only those candidates determined by a vote of the State Party Executive Council to be generally acknowledged or recognized in news media throughout the United States as viable candidates for that office, and who are actively campaigning for the South Carolina Democratic Presidential Primary will be certified. Only those candidates about whom such a determination is made by the Executive Council shall be deemed to meet the qualifications of party rules under and for the purposes of §7-11-20(B)(2) of the Code of Laws. Additionally, no one may gain access to the South Carolina Democratic Ballot unless he or she is a registered voter, is legally qualified to hold the office of the President of the United States, and is entitled to obtain delegates.

In accordance with the Delegate Selection Plan, the State Executive Committee of the SCDP met on December 7, 2015. At that meeting, after consideration and deliberation, the SCDP Executive Committee declined to certify Plaintiff finding that he "has never been to SC, Democratic Party leaders in this state and local area have no knowledge of him, and he remains questionable." (SCDP Executive Council Meeting Minutes December 7, 2015). The SCDP Executive Committee approved submitting the names of Hillary Clinton, Bernie Sanders, Martin O'Malley and Willie Williams as the Democratic candidates to be placed on the February 27, 2016 Presidential Preference Primary ballot. This list of names was submitted to the South Carolina Elections Commission on December 7, 2015. Defendant informed Plaintiff via a letter dated December 29, 2015 that his campaign filing had not been accepted by the Executive Committee of the SCDP. Plaintiff has not filed any challenge with the State Party Committee. The Executive Committee declined to accept Plaintiff's campaign filing after it determined that Plaintiff was not actively campaigning in this state and was not generally acknowledged or recognized in the national media. Plaintiff has never made such a showing either to the SCDP

Executive Committee or to this Court otherwise. As far as can be determined, Plaintiff does not and did not have any political campaign organization in South Carolina. He has not demonstrated a level of support among South Carolina voters or any presence in this state. Further, he cannot show name recognition that would lead to the conclusion that he was, or is now, generally acknowledged or recognized in the national media as a candidate for the Democratic nomination.

The element Plaintiff must establish in order to be successful on the merits of his claim is that the conduct of SCDP "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Duke v. Cleland,* 5 F.3d 1339, 1403. As is more fully discussed in section E., below, Plaintiff fails to make such a showing.

Consequently, Plaintiff is not likely to succeed on the merits in its case against SC Democratic Party and, as such, has not and cannot meet the first requirement needed to sustain a Preliminary Injunction.

### B.     Threat of Irreparable Harm

Plaintiff cannot establish a credible threat of irreparable harm sufficient to warrant a Preliminary Injunction. As set forth above Plaintiff's alleged harm is minimal, at best, especially in light of the fact that plaintiff has never campaigned in South Carolina has no presence in South Carolina, has no likelihood of winning or even competing in the PPP. Plaintiff has a non-existent campaign in South Carolina and is an *insubstantial* candidate. There is no evidence to suggest that Plaintiff's participation in the PPP would affect the outcome. Therefore, Plaintiff's harm is not "irreparable" and, as such, Plaintiff has failed to meet the second requirement for a Preliminary Injunction.

### C.     Balance of Hardships

The balance of the hardships factor favors Defendants in this case. The SEC has outlined in detail in their brief the costs associated with granting Plaintiff's requests. The SCDP joins in the SEC's position on this issue and would state further that the hardships on the campaigns and the voters far outweigh consideration of an *insubstantial* unviable campaign. It is the SCDP and the SEC who would suffer irreparable harm if the court grants Plaintiff's Preliminary Injunction. Plaintiff does not seek preservation of the "status quo," but instead asks this Court to radically alter the current status quo. The relief sought by Plaintiff would require a disruption of the electoral process that has been underway for months. There is no dispute that the Plaintiff has known since at least December 29, 2015 that the SC Democratic Party determined not to include his name on the PPP ballot. The election schedule mandated by state and federal law is well known. The SEC reasonably and necessarily relied upon the SC Democratic Party's determination when it certified its candidates for inclusion on the PPP ballot. And thereafter the SEC and the SCDP commenced the expensive, time-consuming process of preparing for the PPP. Plaintiff waited more than a month to file his Complaint, and even then, did not file any motion for preliminary injunction. He waited another three weeks, until February 2, 2016, to file his motion. Now, on the eve of the PPP, just five days prior to the polls opening, the balance of hardships dictates that the SCDP and the SEC be permitted to continue to proceed as planned with the PPP.

Therefore, Plaintiff cannot meet the third requirement necessary to obtain a Preliminary Injunction.

### D.    Public Interest

14

This defendant is not aware of any significant, independent public interests involved in Plaintiff's case. Although Plaintiff seeks to present a theoretical scenario that warrants protection by the Court, the facts of this case dictate otherwise. Therefore, Plaintiff fails in meeting the last requirement for a Preliminary Injunction**.**

> E.  **The Plaintiff has Failed to Allege a Cause of Action in Count II of his Complaint and has Failed to Show that He was Deprived of Rights, Privileges, or Immunities Secured by the Constitution or Laws of the United States.**

Plaintiffs contend that the SCDP "is subject to 42 U.S.C. § 2000d et seq., also known as Title VI of the Civil Rights Act of 1964 . . . in that their Presidential Preference Primary is conducted by and through the State of South Carolina, and their delegate selection process is an integral component of the electoral process." (Complaint at ¶ 17). Plaintiffs allege that SCDP's refusal to include Plaintiff on the presidential preference primary ballot "has resulted in de facto discrimination against the Plaintiffs based on racial or national origin." (Complaint at ¶ 31).

Plaintiffs' motion seeks protection under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d et seq. That section "prohibits discrimination on account of race, color, or national origin in all programs and activities receiving financial assistance." *Sirpal v. University of Miami,* 684 F. Supp. 2d 1349 (S.D. Fla. 2010) (quoting *Humphrey v. United Parcel Service*, 200 Fed. Appx. 950, 952 (11th Cir. 2006). "Title VI, which is analyzed under an equal protection framework . . . bars only intentional discrimination . . . . Thus, to state a claim under Title VI, a plaintiff must allege facts establishing discriminatory intent." Neither Plaintiffs' complaint nor its motion specifies a federally funded program or activity engaged in discrimination. The failure to do so is fatal to the claim. *Assoko v. City of New York*, 539 F. Supp. 2d 728, 740-41 (S.D. N.Y. 2008). Neither the Complaint nor the motion for preliminary injunction, moreover, allege intent to discriminate or any discriminatory outcome. *See, e.g.,*

15

*Sirpal*, 684 F. Supp. 2d at 1357. Plaintiff has provided no evidentiary support for a Title VI claim.

Given these pleading and evidentiary deficiencies, Plaintiff has failed to demonstrate either a likelihood of success on the merits or irreparable harm. Plaintiff's request for preliminary injunctive relief and summary judgment must be denied.

## CONCLUSION

Based on the foregoing, Defendant SCDP respectfully urges this Court to deny Plaintiffs' motions for preliminary injunction and summary judgment.

      RESPECTFULLY SUBMITTED,

      JAMES E. SMITH, JR., P.A.

      By:___*s/James E. Smith, Jr.*_____
           James E. Smith, Jr., Esq. (Fed Id No. 6502)
           Dylan W. Goff, Esq. (Fed Id No. 11587)
           1422 Laurel Street
           Columbia, South Carolina 29201
           (803) 933-9800
           (803) 933-9801 (fax)

      Attorneys for Defendant SCDP

February 24, 2016
Columbia, South Carolina