IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Roque "Rocky" De La Fuente, | CA No. 3:16-cv-00322-CMC |
| Plaintiff, | |
| v. | |
| South Carolina Democratic Party; Mark Hammond, South Carolina Secretary of State; South Carolina State Election Commission; Billy Way, Jr., Chair of Election Commission; and Mark A. Benson, Marilyn Bowers, E. Allen Dawson, and Nicole Spain White, Election Commission Members, | Opinion and Order Denying Motion for Preliminary Injunction |
| Defendants. | |

On February 2, 2016, Plaintiff Roque "Rocky" De La Fuente ("De La Fuente") filed a Complaint seeking declaratory and injunctive relief determining that the decision of the South Carolina Democratic Party not to include him on the list of approved candidates to appear on South Carolina's Presidential Primary Ballot "is unconstitutional and violative of the 14th Amendment to the United States Constitution and violates 42 U.S.C. § 2000d et seq." Entry No. 1, Compl. ¶ 34. On February 22, 2016, De La Fuente filed a motion for preliminary injunction, asking the court to order a delay of the primary scheduled for February 27, or, alternatively, that his name be added to the primary ballot. For the reasons stated below, the motion for preliminary injunctive relief is denied.

## BACKGROUND

On November 16, 2015, Plaintiff De La Fuente filed his Notice of Candidacy and formal written request with the South Carolina Democratic Party ("Democratic Party"), to be included on the ballot for the Party Presidential Primary, to be held on February 27, 2016. *See* Exhibit

A to Complaint. With his notice, De La Fuente filed his pledge, campaign plan, certification of authorized representatives, and submitted a cashier's check for the $2,500 filing fee. *Id.*

Pursuant to the Democratic Party's Delegate Selection Plan, the Executive Council of the Democratic Party met on December 7, 2015, to consider all Democratic presidential campaign filings. *See* Exhibit B to Complaint. The Council did not approve De La Fuente's filing, as stated in the notification letter De La Fuente received December 29, 2015. *Id.* at ¶ 1.

De La Fuente filed suit in this court on February 2, 2016, seeking declaratory and injunctive relief against the Democratic Party and Mark Hammond, the South Carolina Secretary of State. Compl. ¶ 1. De La Fuente requested that the Democratic Party be required to notify the Secretary of State to include him on the list of approved candidates for the Presidential Primary ballot for February 27, 2016. Compl. ¶¶ 33-34.

Defendant Mark Hammond, Secretary of State, filed a Motion to Dismiss for Failure to State a Claim on February 19, 2016. Entry No. 14. Defendant Hammond amended this motion on February 22, 2016, indicating that De La Fuente had agreed to stipulate to Hammond's Motion to Dismiss. Entry No. 18. De La Fuente filed an Amended Complaint on February 24, 2016, identifying the South Carolina State Election Commission ("Commission") and its Chair and Members, in their official capacities, as new Defendants. Entry No. 29. Defendant South Carolina Democratic Party filed an Answer to the Amended Complaint on February 24, 2016. Entry No. 27.[1]

---

[1] The Democratic Party's Answer was filed prior to De La Fuente's Amended Complaint. However, that Answer is deemed properly filed.

2

On February 22, 2016, De La Fuente submitted a motion for preliminary injunction and partial summary judgment pursuant to Rules 56 and 65(a), Fed. R. Civ. P.[2]  Entry No. 17. Defendant Democratic Party filed a response in opposition to the motion for preliminary injunction and/or summary judgment on February 24, 2016.  Entry No. 28.  Defendants South Carolina State Election Commission and its members filed a response in opposition to the motion for preliminary injunction on February 24, 2016.  Entry No. 31.  A hearing on the preliminary injunction motion was held on February 24, 2016.

## STANDARD

A preliminary injunction is "an extraordinary remedy . . . which is to be applied only in [the] limited circumstances which clearly demand it."  *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991) (internal quotation marks omitted) (citation omitted). The traditional purpose of a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits."  *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003).  To qualify for injunctive relief, a plaintiff must show (1) likelihood he will succeed on the merits; (2) likelihood he will suffer irreparable harm in the absence of a preliminary injunction; (3) that the balance of equities tips in his favor; and (4) that the injunction is in the public interest.  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Real Truth About Obama v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010).

---

[2] Given the tight time frame for this case, the court allowed De La Fuente to submit his motion for preliminary injunction electronically on February 22, 2016.

The *Winter-Real Truth* standard requires the party seeking the injunction to make a "clear showing" that he is likely to succeed on the merits. *Real Truth*, 575 F.3d at 345; *see also Winter v. NRDC*, at 555 U.S. at 22. This standard compels the moving party to show that he is *likely* to prevail. Regardless of the balance of hardships, it is insufficient for the party to show only that "grave or serious questions are presented" in the litigation. *Compare Real Truth*, 575 F.3d at 346 *with Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977).

Second, the moving party must make a clear showing that he is likely to be irreparably harmed if preliminary relief is denied. To meet this test, the party must show more than a mere *possibility* of harm. *Winter*, 555 U.S. at 21. Third, the moving party must show that the balance of equities tips in his favor. *Id.* at 21, 26. Fourth, the court must consider whether grant or denial of the injunction is in the public interest. The court must give "particular regard" to the public consequences of granting a preliminary injunction. *Id.* at 24; *Real Truth*, 575 F.3d at 347. The Fourth Circuit no longer recognizes a "flexible interplay" among these criteria. Instead, each requirement must be fulfilled as articulated. *Real Truth*, 575 F.3d at 347 (quoting *Blackwelder*, 550 F.2d at 196).

De La Fuente seeks mandatory injunctive relief here, asking that the court require the Democratic Party to notify the Secretary of State[3] to include him on the primary ballot for February 27, 2016. Thus, De La Fuente seeks to *alter* the status quo. Such "[m]andatory preliminary injunctive relief in any circumstance is disfavored, and warranted only in the most

---

[3] De La Fuente's Amended Complaint seeks this relief as to the South Carolina State Election Commission, not the Secretary of State. Am. Compl. ¶ 33.

extraordinary circumstances." *In re Microsoft Corp.,* 333 F.3d at 525 (citation omitted). Consequently, "application of th[e] exacting standard of review [for preliminary injunctions] is even more searching when" the relief requested "is mandatory rather than prohibitory in nature." *Perry v. Judd*, 471 F. App'x 219, 223-24 (4th Cir. 2012).

## DISCUSSION

### 1.  <u>Likelihood of Success on Merits</u>

De La Fuente alleges Constitutional due process violations and statutory equal protection violations against the South Carolina Secretary of State, the South Carolina Democratic Party, and, in his Amended Complaint, the South Carolina State Election Commission and its members.  The merits of each claim are addressed in turn.

### A.  Defendant Mark Hammond, South Carolina Secretary of State

De La Fuente's Complaint alleged that Mark Hammond, Secretary of State, is the state official responsible for administering elections.  Compl. ¶ 5.  While the Secretary of State has many duties, none of them involve oversight or authority over the conduct of elections in South Carolina.  De La Fuente has agreed to dismissal with prejudice as to Defendant Hammond, Secretary of State.  Entry No. 18, Ex. A.

### B.  Defendant South Carolina State Election Commission; Commission Chair Way, and Commission members Benson, Bowers, Dawson, and White

In his Amended Complaint, De La Fuente alleges that the South Carolina State Election Commission is the state agency responsible for administering elections in South Carolina.  Am. Compl. ¶ 5.  De La Fuente further asserts that Defendant Way is the Chair of the Commission, and that Defendants Benson, Bowers, Dawson, and White are Members of the Commission. These Defendants are sued in their official capacities.  Am. Compl. ¶¶ 6-7.

5

De La Fuente does not seek any relief from these Defendants in his Amended Complaint, merely noting that the Democratic Party should be required to notify the Commission to include him on the list of candidates to appear on the primary ballot. Am. Compl. ¶ 33. De La Fuente does not allege that the Commission was able to influence the list of candidates submitted by the Democratic Party, or that the Commission's actions were unlawful or unconstitutional in any way. Consequently, there is no likelihood of success on any claim against the Commission or its Chair or Members.

At the hearing on his motion for preliminary injunction, De La Fuente agreed to dismiss all claims against the South Carolina State Election Commission, its Chair Billy Way Jr., and Members Benson, Bowers, Dawson, and White, with prejudice.

### C. Defendant South Carolina Democratic Party

#### i. State Action

When a non-state actor is sued pursuant to 42 U.S.C. § 1983, an initial inquiry asks whether 1) the party engaged in the conduct complained of was acting under color of state law, and 2) whether the alleged conduct deprived a person of rights, privileges or immunities guaranteed under the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

S.C. Code § 7-11-20 governs conduct of party primary elections held by political parties. The party certifies to the State Election Commission the names of candidates to be placed on primary ballots. Such certification must contain a statement "that each certified candidate meets . . . the qualifications in the United States Constitution, statutory law, and party rules . . . ." § 7-11-20 (B)(2)(b). For purposes of this motion, the court will assume without deciding that the Democratic Party's action in declining to approve De La Fuente's filing constitutes state action.

6

*See Rice v. Elmore*, 165 F.2d 387 (4th Cir. 1974) ("When [party] officials participate in what is a part of the state's election machinery, they are election officers of the state de facto if not de jure, and as such must observe the limitations of the Constitution.")

ii.  Due Process

De La Fuente alleges that his Fourteenth Amendment Due Process rights were violated when the Democratic Party failed to include his name on the list of candidates to be placed on the Democratic Presidential Primary ballot. Specifically, De La Fuente alleges that the decision was arbitrary and capricious, and that the delegate selection plan implemented by the Democratic Party was unconstitutionally vague and implemented in a manner that deprived him of due process. Am. Compl. ¶ 21.

The Democratic Party has certain requirements that candidates seeking nomination for President must fulfill in order to be certified for inclusion on the primary ballot. Am. Compl. ¶ 18. The South Carolina Delegate Selection Plan, codifying these requirements, was published to the public by press release and placed on the Democratic Party website on June 12, 2015. Entry No. 28-3 ¶ 4. The Plan provided that the Democratic presidential primary would be held on February 27, 2016. Entry No. 28-2, at 5.

As an initial matter, a candidate must file a statement of candidacy with the Party between November 16, 2015 and December 4, 2015. Am. Compl. ¶ 18.  A fee of $2500 must accompany the statement of candidacy.[4] *Id.*  The Delegate Selection plan notes that "[o]nly those candidates determined by vote of the State Party Executive Council to be generally

---

[4] Per the Delegate Selection Plan, "a candidate may, instead of paying the certification fee to the SCDP, submit a petition containing the names of no fewer than 3,000 registered voters in South Carolina who consider themselves Democrats." Entry No. 28-2, at 14.

acknowledged or recognized in news media throughout the United States as viable candidates for that office, and who are actively campaigning for the South Carolina Democratic presidential primary, will be certified." *Id.*

Although it is undisputed that De La Fuente filed his timely statement of candidacy, along with filing fee and certification of authorized representatives, the Executive Council of the Democratic Party did not approve De La Fuente's filing. Am. Compl., Ex. B. At the meeting of the Executive Council on December 7, 2015, Jason Perkey, the Executive Director of the Democratic Party, reported on De La Fuente's candidacy. Entry No. 28-3 ¶ 7. Perkey explained that De La Fuente was "not generally acknowledged or recognized in news media throughout the United States as a viable candidate and. . . had absolutely no presence in South Carolina." *Id.* at ¶ 9. Specifically in South Carolina, De La Fuente had no staff, no office, no community support, no clergy or elected official endorsements, no participation in party presidential forums or debates, and no campaign material. *Id.* at ¶¶ 10-13. Based on his findings, Perkey recommended that De La Fuente not be certified. *Id.* at ¶14. While the Executive Council discussed his candidacy, no member moved for certification of De La Fuente's candidacy. *Id.* Therefore, the Council did not certify his name to the Election Commission as a candidate for the Democratic presidential primary. *Id.* at ¶15.

The Executive Council also discussed in detail two other candidates who had properly filed to participate in the primary. Entry No. 28-3, SCDP Executive Teleconference minutes, Dec. 7, 2015. Willie Wilson, an African-American candidate from Chicago, had hired staff in South Carolina, visited the state twice, reached out to clergy and elected officials for endorsements, sponsored the presidential forum and debate, and helped with fundraising to offset the cost of the filing fee payable to the state. *Id.* A motion was made that Mr. Wilson be

certified, which carried unanimously. *Id.* On the other side of the coin, Lloyd Kelso of North Carolina was discussed. *Id.* He was not active in his state politics and officials there were unaware of him. *Id.* He had no staff in South Carolina, no campaign visits, no planned engagements, and had reached out only to one county in South Carolina. *Id.* The Council did not certify Mr. Kelso for inclusion on the ballot.

The Supreme Court has laid out a balancing test for determining the appropriate level of scrutiny to be applied in cases involving elections. *Burdick v. Takushi*, 504 U.S. 428 (1992). A court considering an election issue must

> weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interest put forward by the state as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's right.

*Id.* at 434. When a fundamental First or Fourteenth Amendment right is subject to "severe restrictions," the regulation must be narrowly tailored to further a compelling state interest: it must survive strict scrutiny. *Id.* However, a state's important regulatory interest is generally sufficient to support a restriction that is reasonable and nondiscriminatory. *Id.*[5]

A unanimous Supreme Court has held that a state has "a legitimate interest in regulating the number of candidates on the ballot." *Bullock v. Carter*, 405 U.S. 134, 145, (1972). In doing so, the state "understandably and properly seeks to prevent the clogging of its election machinery, avoid voter confusion, and assure that the winner is the choice of a majority, or at

---

[5] Ballot access for candidates, "[a]lthough not as compelling as the citizen's interest in casting an effective vote . . .has been recognized as an important and related interest." *Kay v. Austin*, 621 F.2d 807, 811 (6th Cir. 1980). However, this must be balanced against the state's right in conducting an orderly election.

least a strong plurality, of those voting, without the expense and burden of runoff elections."

*Id.* The state's right

> to restrict access to primary ballots is accepted as a legitimate means of preventing candidates who have not even a minimal degree of voter support from appearing on the ballot. Requiring a showing of substantial support reduces waste and confusion by excluding from the ballot frivolous candidates by requiring a showing of substantial support.

*Anderson v. Celebrezze,* 460 U.S. 780, 788–89, n. 9 (1983); *see also Lubin v. Panish*, 415 U.S. 709 (1974) ("That 'laundry list' ballots discourage voter participation and confuse and frustrate those who do participate is too obvious to call for extended discussion.").

De La Fuente alleges that the standard used by the Democratic Party was "so vague and ambiguous that it deprives Plaintiff of due process." Am. Compl. ¶ 23. The standard complained of requires that potential candidates be not only generally acknowledged or recognized in news media throughout the United States as viable candidates for the office, but also that candidates be "actively campaigning for the South Carolina Democratic presidential primary." Am. Compl. ¶ 18. De La Fuente notes that he has been accepted on the ballot in over forty states and territories. Entry No. 17 at 6.

The issue then is whether the rules of the Democratic Party, which limit ballot access for the South Carolina Democratic Presidential Primary to candidates "generally acknowledged or recognized in news media throughout the United States as viable candidates for that office, and who are actively campaigning for the South Carolina Democratic presidential primary," are reasonably necessary to achieve the legitimate state interest in keeping its ballots within manageable limits to assure that fragmentation of voter choice is minimized, or whether such rules are unduly vague and thus not reasonably necessary to achieve the legitimate state interest of regulating ballot access.

10

A statute may be found void for vagueness if one of three issues arise: the coverage of the statute is unclear, the statute does not sufficiently specify what those within its reach must do in order to comply, or the officials charged with its enforcement have unreviewable discretion. *Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610, 621-22 (1976). De La Fuente asserts that the Democratic Party's delegate selection plan demonstrates all three of these infirmities. He argues that the phrase "generally acknowledged or recognized in news media" fails to specify by which type or source of news media a candidate must be recognized, leaving a candidate without a way to discern whether he or she will be chosen. Second, De La Fuente argues that the requirements fail to specify what a candidate must do in order to comply, and leave open what would be sufficient to determine that a candidate is "generally recognized:" specifically, what number of news stations would be sufficient, and how extensive the coverage must be. Finally, he argues that the Democratic Party has unreviewable discretion in determining the candidates to certify to the Election Commission.

However, statutes and requirements similar to those of the Democratic Party in this case have been upheld as valid and reasonable restrictions on ballot access. The Sixth Circuit Court of Appeals considered a similar standard for ballot access, which provided that the Secretary of State of Michigan "shall issue a list of the individuals generally advocated by national news media to be potential presidential candidates for each party's nomination. . ." *Kay v. Austin*, 621 F.2d 809, 810 (6th Cir. 1980). The court held that, because the phrases were "capable of narrow and reasonable applications," which the Secretary of State had given them, the statute was not void for vagueness. *Id.* at 812.

In *Belluso v. Poythress*, the District of Georgia upheld a statute that required candidates to be "generally advocated or recognized in news media throughout the United States" as

11

facially reasonable. 485 F. Supp. 904, 907 (N.D. Ga. 1980). The court held that the statute was not standardless or arbitrary, but served to evaluate a candidate's seriousness, in that a "minimum degree" of public support was shown by media recognition. *Id.* at 913.

The District of Maryland upheld a statute that granted sole discretion as to selection of candidates for primary ballots to the Secretary of State, who was to place those candidates whose "candidacy is generally advocated or recognized in the news media throughout the United States or in Maryland" on the ballot. *LaRouche v. Sheehan*, 591 F. Supp. 917, 918 (D. Md. 1984). That court found that media recognition provisions "serve[] the legitimate – and important – state interests of providing a basis for reasonable assessment of the seriousness of an individual's candidacy and for exclusion of frivolous candidates from the ballot." *Id.* at 928. Further, the court held that even sole discretion did not render the statute impermissibly vague, because it imposed a sufficiently clear standard within which the person in whom the discretion was vested must operate. *Id.* at 925.

The District of Kentucky considered a similar statute, but one which lacked key language. *Kay v. Mills*, 490 F. Supp. 844 (E.D. Ky. 1980). That statute provided that the Board of Elections nominate candidates "generally advocated and nationally recognized as candidates of the political parties for the office of President of the United States." *Id.* at 850. In *Mills*, the court acknowledged that, as recognized in *Kay v. Austin*, the addition of the phrase "in the news media" would render the statute constitutional, because it would add specificity to the requirement by describing the source of the required recognition. *Id.* at 854.

Similarly, the District of Rhode Island considered a statute that lacked "meaningful criteria" by defining a "'bona fide national candidate' as a person 'generally recognized nationally as a presidential contender within his or her respective party.'" *Duke v. Connell*, 790

F. Supp. 50, 54 (D. R.I. 1992). That court found that the Rhode Island statute, devoid of any standard, was void for vagueness. *Id.* However, the court recognized that the media recognition standard provided more objective criteria and had been upheld by previous courts. *Id.*

This review of pertinent case law reveals that standards such as the one at issue here have consistently survived vagueness challenges. The Democratic Party's requirements that candidates be "generally acknowledged or recognized in news media throughout the United States as viable candidates for that office, and . . .actively campaigning for the South Carolina Democratic presidential primary" are consistent with statutes containing a news media recognition standard that were upheld. Such requirements provide a sufficiently clear standard that is not arbitrary, but instead serves to assist in evaluating a candidate's seriousness in running for election. *See LaRouche*, 591 F. Supp. at 928 ("The media recognition provision is a permissible means of gauging the subjective desire of a candidate.") Importantly, the standard is capable of narrow and reasonable application. Although the Executive Council of the Democratic Party has discretion in determining which candidates meet its requirements, the restrictions on candidacy are not so vague that a court is unable to review a potentially arbitrary decision. Because the Executive Council must use its discretion within clear standards, the grant of discretion to a limited number of people does not serve to void the requirement. Further, the Perkey affidavit reflects that the Executive Council did not exercise its discretion arbitrarily in this case.

Accordingly, De La Fuente has failed to make a clear showing that he is likely to succeed on the merits of his claim that the Democratic Party's decision not to certify him for inclusion on the primary ballot was a deprivation of due process under the Fourteenth Amendment, and violative of 42 U.S.C. § 1983.

iii.  <u>Discrimination and Equal Protection</u>

The equal protection claim of the Amended Complaint, based on the Civil Rights Act, appears to allege that the Democratic Party declined to certify De La Fuente for inclusion on the ballot due to racial discrimination against Hispanic candidates. ("[T]he candidates included on the Democratic Presidential Preference Primary ballot in South Carolina are all non-Hispanic. . .").  Am. Compl. ¶ 29.  However, De La Fuente's equal protection claim does not allege any basis on which this court might infer, or even analyze, any discriminatory action by the Democratic Party.  De La Fuente's conclusory allegations are insufficient to mount a challenge based on discrimination and equal protection.  Nor has De La Fuente alleged that the party's rules were intended to, or had the effect of, treating him differently from other similarly situated persons. *See Swanson v. Pitt*, 330 F. Supp. 2d 1269, 1275 (M.D. Ala. 2004).  Thus, De La Fuente has failed to show a likelihood of success on the merits of this claim.

**2.  <u>Irreparable Harm</u>**

There is no doubt that De La Fuente will suffer some harm if this court fails to grant the relief requested.  However, as explained below, this harm is a result of De La Fuente's own lack of diligence.  Further, the alleged harm is negligible, as De La Fuente was not actively campaigning in South Carolina and had minimal likelihood of winning delegates through the South Carolina Primary.

**3.  <u>Balance of Equities</u>**

An examination of the balance of the equities fails to show that the equities tip in De La Fuente's favor.  His actions here indicate a lack of diligence and significant prejudice to the Democratic Party, the South Carolina State Election Commission, other candidates, and the

14

voting public.  *Perry v. Judd*, 471 F. App'x 219, 224 (4th Cir. 2012) (citing *Costello v. United States,* 365 U.S. 265, 282 (1961)).

   i. <u>Lack of Diligence</u>

  The South Carolina Democratic Presidential Primary is scheduled for February 27, 2016.  By state and federal law, military and overseas ballots were required to be mailed by January 13, 2016.  S.C. Code § 7-15-405; 52 U.S.C. § 20302 (a)(8) (formerly cited as 42 U.S.C. § 1973ff-1).  Based on the publicly available Delegate Selection Plan of the Democratic Party, the Executive Council was to vote on candidates to certify for inclusion on the primary ballot on December 7, 2015.  On the same day, the Democratic Party reported the names of those certified to the South Carolina State Election Commission.  On December 12, 2015, the Election Commission placed an announcement on its website naming the candidates who were certified by their respective parties for the primary ballots.  Entry No. 17 at 4.  Those included for the Democratic presidential primary were Hillary Clinton, Martin O'Malley, Bernie Sanders, and Willie Wilson.  *Id.* at 4-5.

  De La Fuente's name did not appear on the Election Commission's list as certified by the Democratic Party.  *Id.*  De La Fuente was notified by letter on December 29, 2015 that the Executive Council did not approve his filing.  Am. Compl., Ex. B.

  Although De La Fuente had timely filed his statement of candidacy, De La Fuente did not take immediate action.  Even though the primary was less than two months away, De La Fuente failed to file his Complaint until over a month later, on February 2, 2016.  In the meantime, the Election Commission had prepared and mailed military and overseas ballots.

Summons were issued on February 3, but no action to serve Defendants with the Summons and Complaint occurred until the court's case manager contacted De La Fuente on or about February 11, to inquire about service. Subsequently, Defendants Democratic Party and Mark Hammond, Secretary of State, were apparently served on February 16, and Returns of Service were filed on February 18. Entry Nos. 12, 13.

On February 19, Defendant Mark Hammond, South Carolina Secretary of State, filed a Motion to Dismiss contending he is not a proper party as his office has no authority or oversight over elections in South Carolina. Entry. No. 14. De La Fuente thereafter filed an Amended Complaint naming the Election Commission and Commissioners as a parties on February 24, 2016. While the Amended Complaint had not been served on the Election Commission and Commissioners at the time of the preliminary injunction hearing, their counsel appeared at the hearing and their position on the preliminary injunction was heard.

Not until February 22, 2016, did De La Fuente file a motion for preliminary injunction. Entry No. 17. De La Fuente offers no explanation for his delay, which shows an inexcusable lack of diligence given the timetable for the primary election.

ii. <u>Prejudice to Defendants</u>

In addition to being inexcusable, De La Fuente's delay would cause great prejudice to Defendants if this court were to grant the relief requested. As noted above, under federal law, a state has a responsibility to mail absentee ballots to military and oversees voters at least 45 days before the election. 52 U.S.C. § 20302 (a)(8). Notwithstanding the lead time required to prepare, print, and ready the ballots for mailing, it is clear that the 45 day requirement for mailing passed weeks before De La Fuente filed suit.

16

If this court were to order that De La Fuente be included on the ballot for the primary on February 27, such a decision would greatly disrupt the primary. Either new ballots containing De La Fuente's name would have to be prepared and mailed to military and oversees voters with great haste, and still in violation of federal law, or the ballots used in the primary would differ from those used for military and oversees voters. In addition, all primary ballots would require revision, now only two work days before the primary. Affidavit of Marci Andino, Executive Director of the Election Commission, Entry No. 31-1. This is not a quick fix – the time required for even the initial step of rebuilding the forty-six county voting system databases would be over a week. *Id.* at ¶ 10. It is simply impossible to achieve the relief De La Fuente seeks within the time constraints of the current primary schedule.

De La Fuente's alternate proposal, that this court delay the Democratic primary to allow the Democratic Party time to amend the requirements of its delegate selection plan to a "manner that treats all candidates equally," would even more harshly prejudice Defendants. The South Carolina Democratic presidential primary would be unduly delayed, in spite of all of the preparation, and this delay would serve to disrupt not only the primary process in South Carolina, but nationally, as candidates continue to vie for party nomination.

The court finds that the equitable doctrine of laches weighs heavily against De La Fuente. As explained by the Fourth Circuit in *Perry v. Judd*, "applications for a preliminary injunction granting ballot access have been consistently denied when they threaten to disrupt an orderly election." 471 F. App'x at 227-28; *see also Fishman v. Schaffer,* 429 U.S. 1325, 1330 (1976) (Marshall, J., Circuit Justice) (denying ballot access injunction in part on the ground that "applicants delayed unnecessarily in commencing [the] suit" until "[t]he Presidential and

17

overseas ballots have already been printed; some have been distributed[, and t]he general absentee ballots are currently being printed."); *Westermann v. Nelson,* 409 U.S. 1236, 1236–37 (1972) (Douglas, J., Circuit Justice) (denying injunction "not because the cause lacks merit but because orderly election processes would likely be disrupted by so late an action."); *Williams v. Rhodes,* 393 U.S. 23, 34–35 (1968) (denying a political party's ballot access request, despite the unconstitutionality of the relevant statute, because "relief cannot be granted without serious disruption of election process").  Many of those injunctions were denied based on laches, even though an analysis on the merits may have led to a different result.  Here, analysis of the merits bolsters the denial of an injunction.

The court finds that Plaintiff has unreasonably delayed in filing and pursuing this action and that the only relief available at this late date would prejudice Defendants.  The court, therefore, finds that De La Fuente cannot show that the balance of equities tips in his favor.

### 4.  <u>**Public Interest**</u>

The public has an interest in ensuring that the State's primary election is conducted pursuant to state law and that only qualified candidates appear on the ballot.  The relief sought by De La Fuente is not in the public interest, as it would disrupt the election at the last minute and without an adequate legal basis. *See Perry v. Judd*, 471 F. App'x at 227 ("[I]n a broad sense, the public is potentially prejudiced as well, as [the state is] charged with ensuring the uniformity, fairness, accuracy, and integrity of [ ] elections.").  Each of these strong public interests could be harmed if De La Fuente's requested relief were granted.  Therefore, the court finds that the public interest would be harmed if a preliminary injunction were granted at this late stage in the primary process.

18

**CONCLUSION**

The court denies De La Fuente's motion for preliminary injunction on the basis of the equitable doctrine of laches.  Based on the time frame of the primary election process, it is simply too late to grant the relief requested: the primary would be thrown into confusion.  A decision on laches resolves De La Fuente's request for relief; however, this court also finds that he has failed to show a likelihood of success on the merits or irreparable harm.  Further, an injunction is not in the public interest.  Therefore, the motion for preliminary injunction is **Denied**.[6]

Defendant Mark Hammond, Secretary of State, and Defendants South Carolina State Election Commission, Way, Benson, Bowers, Dawson, and White are **dismissed with prejudice**.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
February 25, 2016

---

[6] De La Fuente also moved for Summary Judgment pursuant to Rule 56, Fed. R. Civ. P.  Any further response by the Democratic Party to that motion shall be filed no later than March 10, 2016.